All rise. Please be seated. Good morning, ladies and gentlemen. The next case on this morning's docket is the case of James and Ellen Bollmeier v. Patrick Roy and Elizabeth Roy. And we have Mr. Pulaski for the appellant and Mr. Erdman for the appellate. I'm sorry, and Mr. Hudson. Are you both going to argue? Yes. Okay. Thank you. And you may proceed, Mr. Pulaski. Thank you. Well, what we have before the court is both simple and needlessly complex. Well, you could just start with the needlessly complex, not needlessly complex, but I didn't see a whole lot of simplicity in any of it. Well, my point is what started out as two pieces of paper, whether or not they were notes and whether or not they were gifts or not gifts, has morphed itself into, frankly, a law school examination of procedural technicalities, third-party practice, and the likes of which, as an attorney for 25 years, I've never seen. And I'll be perfectly candid with this court. There are many questions that are raised that, frankly, I was not able to find a case on point, and I don't know that my colleagues fared much better than I did in that regard in their response. But we raised several issues, the likes of which I have not seen addressed by an appellate court. For example, one of the principal issues in this case is what is to be done with the fact that there's a pending divorce action and this action, and, frankly, Mr. Putnick, the one thing, maybe the only thing that he might agree upon is that collateral estoppel and res judicata apply to the divorce court's determination of the treatment of those notes, those pieces of paper that are at issue in this case. They're binding with respect to my client, Mr. Roark, and Ms. Watkins' client, Ms. Scott. And we're sort of stuck in a limbo, and I don't have an answer other than to say I understand Judge Rudolph's dilemma in wanting to get a case off his docket. And the case had been pending for years and years, and the divorce court is this panel may or may not be aware. Maybe it's way to the Court of Appeals, and it's not back again. And it's my understanding, although I'm not an attorney at a divorce court, and Mr. Erdman's not an attorney at a divorce proceedings and has a t-shirt to show it, I do know that or believe that the divorce case is now essentially at the stage of a motion for a new trial. Depending upon the outcome of that, it may be a short while before it winds its way up before this panel again. So you're at least representing that there's a conclusion in the divorce case? There's been two rulings on this particular subject matter. By subject matter, I mean the two bills that were issued. Right. And so first, Judge Cruz essentially ruled, as has been put forth in the record, that this essentially is going to be a responsibility of Ms. Scott to take care of. Judge Gomerick, who took over from Judge Cruz in the divorce matter, issued a similar order, I believe that I have attached for me in the record and made reference to in my brief, essentially making the same finding. So, again... But my question went to whether or not all matters have been resolved in the divorce. No, it is not a final... And I'm sure Mr. Erdman will speak to that. Right. There's no final judgment in the divorce. It is not a final judgment in the divorce court. Right. My point is that the trial court in this case was Leslie Hobson's choice, and I understand the difficulty of not being able to wait forever. But you have two different persons' rights of interest. My client had a right to pursue a claim for contribution. That right was truncated in the trial court when summary judgment was granted. And basically agreeing with my argument and Mr. Hopnick's argument that the divorce court had res judicata claro estoppel, binding authority, and that the parties would be bound by that judgment. What I had respectfully requested in the trial court was that the matter be stayed pending a final judgment in the divorce court. To avoid the essentially inequitable problem of my client being forced to face garnishment, pay a judgment, and then try to seek recovery from Ms. Scott, only to have either the trial court or the court of appeals here or both reach the conclusion that that's the entire responsibility of Ms. Scott. And again, we certainly have two trial court orders from the divorce court that have reached that conclusion. Let me ask something. Sure. That I was confused about. How is it that the House went on the market to begin with? Was there an order that stated that it should be marketed? Or was there an agreement? To be perfectly candid, since I wasn't in the divorce proceeding, and I'm the second lawyer on this case for Mr. Roy, I wasn't privy to the behind-the-chambers situation there. But I do understand that there was, in effect, a contract, which I had to provide to the court, that was signed by both Ms. Scott and Mr. Roy to sell the house. I'm aware of that, but I wondered how the whole decision to market the house before the court had decided what the marital equity was going to be and how that arose. I know that that house was hotly contested, and perhaps Mr. Hudnick could address that. I apologize, Your Honor. I don't know the answer to that. So this case raises some very difficult situations in terms of what is to be done with respect to my client's right to contribution. And I don't think that anyone is claiming that my client doesn't have a right to contribution. The question really is, in which court takes precedence, and what do you do about if it is a divorce court, and it seems to be some agreement among the attorneys that it should be a divorce court, they have jurisdiction and should decide the matter, what should happen during the pendency of the case before the trial court in this case? Again, I would respectfully suggest to the court that the better practice would be to stay this action pending a final resolution in the divorce case. I also wanted to address in sort of a broad scope, because the time doesn't permit me to go through each and every issue of error, but essentially my client's claims back against the Bullmeyers and against Ms. Scott, I did see that my esteemed colleagues are taking exception as to whether or not I have made essentially a strong enough case to show that there is a legal cause of action for cloud and tidal or tortuous interference as a result of the premature filing. There's no dispute that there's a premature filing of the judgment lien. The judgment lien was entered shortly after Ms. Scott essentially rolled over and confessed judgment in the case, and so there was a lien that was placed on the premises well before the completion of the matters at issue in the trial court here. So we have an obvious premature judgment lien. The case law, which we have cited to the court, the King case, and there's another case that addresses the fact that this is premature, that a judgment lien cannot issue until the judgment is final. And so it's my contention given the wealth of correspondence that went back and forth between the lawyers in this case that specifically addressed the issue of, quote, cloud on tidal, that's not my language, that's the specific language in the record before this court and was made available to the trial court below, clearly indicates the nature of a cause of action. In what way? What's that? In what way? In that the parties themselves knew that the property, to use Mr. Erdman's term, was not merchantable, meaning it could not be sold until such time as their premature filing of the judgment lien was removed. My client, along with his now ex-wife, Ms. Scott, they had a contract which they agreed to. The Welch's had agreed to. They had an agreement as a price. And it's illegal. And we have the benefit of the title company's analysis of the problem as an issue. And the only issue to manifest itself that prevented this property from closing was, in point of fact, I believe it's item number 11 on the exceptions to policy was specifically the premature filing of the judgment memorandum, which was not a final judgment. So that, and clearly there's documents in the record that demonstrate that absent the Bowmeyers signing some sort of release or acquiescing in some way to this premature judgment lien, the property at 323 Benedictine was not going to be sold. So that to me is both a cloud on title and tortious interference with a business expectancy, tortious interference with a contract. My client had a contract. He had a willing buyer. The buyers, as you can tell from representations made by Mr. Johnson, were ready, willing, and able to close. And they were unable to close because of this cloud that was created by not a final judgment, which would have been permissible, but by the premature filing of a lien. And as a result of that fact, my client was damaged. The notion that sometimes damages are speculative is ridiculous. We know exactly what the cost to Mr. Bowmeyer would be in terms of there's a price that was agreed to. There's interest that runs from the time period from when the lien was filed to the point in time that we're dealing today. I think that those damages accrue. So clearly there's damages there. But those damages can't be actually determined until there's a determination as to the division of the asset by the divorce court, correct? I think that that's probably correct, which would, to me, underscore the necessity of staying the action pending a determination as to certain issues of the divorce court. But I think that Mr. Erdman would disagree with you, saying that because his clients are not parties to the divorce proceeding, that they're not bound by any determination made by the divorce court. So I see the merits of your contention, but I think perhaps it's an open question. But at a minimum, it would suggest that the better practice for the trial court would be to have stayed this proceeding until all those issues could have been resolved with some degree of definition, as opposed to, like you said, whether or not my client's entitled to how much of the items in the proceeds is probably still a matter of the divorce court. So the problem that we have is that there's a variety of issues that the trial court, the trial court, I think, abused its discretion in forgetting its proper role in a summary judgment case. Specifically, I think what happened here is that the trial court weighed the evidence, as opposed to trying to do a survey of the record to determine whether there's a bona fide dispute as to various contentions. For example, how in the world can the trial court determine whether or not there's intent to make a gift, whether there's intent for malice on the part of filing a lien? Those questions really should be reserved for the trial fact, which in this case, as opposed to the divorce case, would be the jury. And I think that the trial court abused its discretion by saying, I don't find this to be a very compelling argument, or I disagree with Mr. Roy's contention. I agree with the Bowmeyer's affidavit that says that it was not intended to be a gift. So you're telling me that the divorce court is not the correct court to determine whether or not it was a gift in determining whether or not it is a marital asset or a debt? No, I think that the divorce court is the proper court to determine whether or not it is a marital asset, and to the extent that there is marital debt and marital income, apportioning that, and apportioning who has responsibility for it. I thought you just said it was the trial court in this case. The trial court in this case did undertake that effort. That's the problem, is that if anyone's going to decide it, and the court's not going to grant a stay, then under those circumstances, it's not the trial judge here that decides that. It's the jury that's available to decide that issue. So I didn't make it very clear, and I apologize. So if this court entertains a stay, I think all those things are probably decided by the divorce court. If the court says no, we can't have these cases languishing on the court's docket forever, and so the fact that the divorce case has languished on and on and on, up and down from the Court of Appeals and so on, we have to have some determinative resolution. The Bowmeyers deserve their day in court. If that's the case, then the trial court abuses discretion in taking upon himself to determine which of the two affidavits or deposition testimony on the issue of intent should be believed. Took it upon itself whether or not there was contrary evidence as to what the parties were thinking when they asserted what they clearly knew at some point very shortly after was premature filing of a lien. So again, questions of intent such as that are almost always exclusively left to the finder of fact, and whether that be the trial in the divorce court or is the jury in this case, it certainly was not the trial judge. And I think he crossed the line when he issued a ruling in that regard. There is a sketch limitations issue which I think has a unique wrinkle which I am not aware of. Generally speaking, a payment, and I certainly acknowledge Mr. Erdman's argument, that if a party makes a payment, that would forestall the sketch limitations. But what we have here in this case is not your garden variety situation, but rather you have the two defendants are very adverse. The testimony in the case is that my client, Mr. Roy, had nothing to do with making any of the payments. It wasn't about a marital funds? Right. I believe it was. What does it matter? It matters to the extent that what I'm suggesting is Ms. Scott could have essentially waived on behalf of my client, who obviously has divorced parties, they're not in the privity in any real sense. She could waive that sketch limitations defense by making some sort of payment. So what I'm asking this court to do is to make a bright line rule. This is a novel argument. Do you have any case law to support? I do not. But here, the rationale for it is that if you don't do that, in effect, you're giving one party in this case, who is very adverse interest to another party. Adverse at the time that these payments were made? They were made years and years early on in their marriage. As several were, I think that there were a few payments that were made. As I understand it, the payment history is that some payments were made at the very beginning. And then there's a long lapse in time of approximately almost 10 years. And that's the point, is that the sketch limitations would have run but for the last payment that was made. Because of that last payment being made, it essentially waived my client's sketch limitations defense by conduct. Not his conduct, but the conduct of a co-defendant. So I think that that poses some ethical and legal concerns. And I don't think that as a matter of long summary judgment, the trial court should have entered summary judgment on that issue. But rather, should have allowed testimony of the parties concerning the transactions, when they were made, why they were made. There's another issue with respect to the payments that may not be very clear from the dry reading of the briefs and the records and documents that have been provided. But there's substantial questions as to the amount of the payments that were made. And that my clients would do, Mr. Roy would do work for the Volmeyers and receive payment. And whether or not there were proper credits that were given. And so those are some other issues that I believe make rendering summary judgment of a judgment in an amount, a very final and particularized amount, improper in this case. I think, for example, there was a $4,500 payment that surfaced in the divorce case. That after this case had been filed and the other case had been filed, and the amount was thought to be a certain figure. And then that figure had to be revised in light of a discovery of a payment that had been made sometime previously. I raise that point simply to advise the court that what we're dealing with here was anything but a crisp and clear, here's a piece of paper saying this amount of money and a very clear payment history. I don't think that's what we're dealing with. A typical family interaction. Correct. Perhaps. I want to ask you a question about the notes. I gathered from perhaps your brief that one of the notes was not for the house but for a car. Is that your position? That's right. There's two notes. The first one, as I understand it. You can finish that. As I understand it, the payment was to be used to put a down payment on the Benedictine house. The purpose for which was that they wouldn't have to pay the PMI insurance. Then subsequent to that, and that note I believe was prepared about a month after those funds were received. Okay, but I'm just asking about the, and the rest of it is laid out pretty clearly. You're saying that the second note, which was for a 25 something. Was for a Honda Odyssey van.  I don't believe that it is. Okay. You'll have the opportunity for rebuttal. Thank you very much for your argument. Thank you. Mr. Urban. May I please report to counsel? Yes. Mr. Pulaski has one option, one thing I was going to remind the court. And that is that for all of these other issues, this is still essentially a case about two promissory notes. I know we've heard a lot about the divorce. I know that Mr. Pulaski has said that the parties are in agreement. That there's collateral estoppel. There's res judicata. First thing I would say is that my clients don't agree to that. My clients, my clients are not parties in the divorce case. They are not bound by res judicata. Whether they are bound by collateral estoppel depends on whether their interests are the same as the interests of one of the parties in the divorce case. What say you about the fact that at least two of the divorce judges have essentially found that the Bullmeier's daughter needs to essentially have a set off for the amount of the notes? I think that's fine for the divorce case to decide. Now, I don't think that's binding on my clients. I think that my clients have these promissory notes. There's no evidence. I just heard Mr. Pulaski say there are questions about family dealings and so forth. We're not here on questions. We're here on what would be provable evidence at the time of trial. That's one of the essential moments of a summary judgment is for the judge to figure out what's going to be admissible evidence at the time of trial. And I know that as far as the gift question, for example, which, by the way, is not one of Mr. Pulaski's seven issues in his brief, but it keeps coming up, and so we addressed it in our reply brief. He says, well, in my opinion, it was never a gift. I didn't suppose it was a gift. Folks, that doesn't make the gift. You've got to have intent. They didn't take my client's deposition. Okay, Mr. Pulaski referred to it. Mr. Peck has gotten so tired of me reminding him that I'm not in the divorce case that he gave me the T-shirt. Are we supposed to note that it's orange? Is that U of I color? It is U of I color, Your Honor. I was not going to necessarily mention that. For the record. For the record, it's orange and blue. Yes, ma'am, it is. I've mentioned a little bit about res judicata and promissory staff. Let's talk just a second about the so-called premature release. I realize that there are a couple of judges that decided along the way that based on a couple of the cases that Mr. Pulaski has cited, that the filing of the judgment lien was premature. So at your position, it was not premature? Correct. Okay. Correct. And I will acknowledge that by a failure to cross appeal from the prior ruling, not in the divorce court because I'm not in the divorce case, but by Judge Hayden, who was the prior judge in our promissory note case, that the lien was null and void or whatever his wording was. I may have missed bringing up that issue on appeal, but... But your client's daughter confessed judgment in the divorce case. Not in the divorce case. She confessed judgment when we filed the promissory note case. She immediately came into the promissory note case and said very honestly, yeah, I owe the money. And I submit there's nothing wrong with that. If you owe the money, fess up. I owe the money. Don't put the court system and parents and everybody else through what we've been put through otherwise. I don't think there's anything wrong with confessing a judgment if the money is owed. And by the way, there's been no proof of any amount due other than the judgments that we have. There's no affidavit. Payment, after all, is a permanent defense. It's never been claimed in this case. And so there's no dispute as to the amounts due as far as I can tell. I know Mr. Polosky would like to make a big deal about, well, she's supposed to pay it, not him. That may very well be up to the divorce case, but we're not in the divorce case. We have the right to collect the judgment against either or both of them from time to time. I know Mr. Polosky's brief says that the Bowmeyers have undertaken no effort to collect anything against the daughter. That isn't true. That's why we filed the memorandum of judgment when the statute said we could file a memorandum of judgment. We have a judgment against her. She's not appealed. When we filed the memorandum of judgment, frankly, I didn't look at Supreme Court Rule 304. That deals with appeals. We weren't in any place supposed to appeal. I had a statute that said you get a judgment, you file a memorandum of judgment. And so it was my position, it was my position below, that we were entitled to file that memorandum of judgment. We had a statute that said we could. And I think that's still a reasonable position, even if, even if we were wrong about that. And Mr. Polosky is talking about his cloud-on-action, his cloud-on-title action. I don't know what the elements of a cloud-on-title action are. His brief doesn't say what they are. He's citing no authority, giving this Court anything to look at about a cloud-on-title action. I think that the closest thing that it comes to is a slander of title action. And with a slander of title action, as we've discussed in our brief, there are bing, bing, bing, bing, bing, bing, about six elements to that. None of them apply in our case. You have to report something that's false. It was not false. We said we had a judgment against her. We had a judgment against her. It said that it disparages the title of the complainant. It doesn't disparage the title of the complainant. He still has his undivided one-half interest. We didn't say that we had a judgment against him. You have to have damages. And as the Court has already noted, there's no specificity about the damages. That, in part, relates to the divorce court and what the divorce court decides about who gets what about the house and who has to give what credit for mortgage payments made since the parties moved out, all of those kinds of things. There's no slander of title action yet. As far as the purchase interference with the contract, there are bing, bing, bing, bing, bing, about a half a dozen items on that. You have to have the existence of a contract. At the time we reported the memorandum of judgment, there was no contract. You have to have malice. My clients were merely trying to collect their judgment. Counsel, is there not a genuine issue as to the malice? I mean, should that be for the trier of fact to determine? I think it would be for the trier of fact if it had been appropriately raised by the other side. There's no affidavit of malice. I understand the circumstances, but we've cited cases in other contexts. It was a mechanics lien case, for example, where the appellate court decided that even if it should later turn out that the services on the mechanics lien were not lienable services, that doesn't mean there was malice at the time that the memorandum of judgment was filed. I think that's probably the closest case that we have to anything that's here. But why doesn't the amount of debt belong in the divorce case? The amount of which debt? On the promissory notice? Yes. No, because my clients are in a divorce case. The court has ruled that the contribution at the cross-claim against Elizabeth for contribution and indemnity belongs in the divorce case. And I agree with that. Okay. Yeah. I joined you in that motion. That was the last thing that had to be decided before we could come to the appellate court. There was that cross-claim that was still pending in both cases. And I would point out to you that there is one typographical error in my brief at page 19, where I refer to the doctrine of collateral jurisdiction, which should be the doctrine of concurrent jurisdiction, because the two courts had concurrent jurisdiction over that question of whether she owes her former husband anything. So if the divorce case beats you to the verdict on how much is owed to the Bohlmeyers, is that res judicata in your case? If the divorce case does that? Yes. No. No. No. We're not in the divorce case. I'm aware of that. I'm aware of that. But the divorce court has jurisdiction over the marital property that's an issue. Yes. And has the authority to determine debt and what the debt is and who the debt is owed to and the credibility of the parties. And I just envision that there can be different outcomes in this. I don't think there can be a different outcome as to the amount of the debt on the promissory notes. Because the payees, the Bohlmeyers, are not a party to that. What there could be is that a divorce court would say, okay, Elizabeth, you got the house, you paid the debt that goes with the house. I can see that that's possible order. My client's having a judgment against Bohlmeyer. I'll ask you to just step aside from knowing the fact that my client's happened to be the parents of one of the people in the divorce. Let's assume I'm a hospital. And let's assume that I'm a hospital with a judgment against Bohlmeyer. I think that the divorce court can decide as between themselves contribution. But my hospital has the right to collect from either one of them whenever we can collect from them. Whether it's by wage garnishment, whether it's by some other asset that they may own, whether it's by something else. Ultimately, between the two of them, there may have to be some reckoning. But my client, the hospital, and I think it's analogous to our situation here, has the right to go against either one of them until we're paying in full. I know Mr. Polosky's brief says you're going to have a double recovery. We can't tell who's recovered when. I don't think that's any different from the hospital case. When a hospital goes and collects, I don't know how they're supposed to find out who's paid what to the hospital, but that's between them. My client's been told to be paid once. And there's been no evidence that we've even been paid a penny. Not once. I think I better continue so I leave some time for Mr. Hotley. You two have divided your time? Yes, ma'am. Okay. I think the court has properly noticed that the payments were during the marriage, not after the parties separated in 2009, that the divorce case number is a 0-9 case. The payments were made that we refer to as the last payments, saying that the statute of limitations were all made in 2008. So I think maybe Mr. Roy has forgotten when he was divorced. I'll take any other questions the court has. Otherwise, I'll stand on my brief and leave a little time for Mr. Hotley. Thank you, Mr. Horton. Thank you. Mr. Hotley? May it please the court, Mr. Fairman, Mr. Pulaski. So far what the court has heard regarding the divorce case bears no resemblance to the truth. I apologize for my rudeness, my lack of manners, but I'm sitting here hearing representations made about what took place in the divorce case. And I will stand here and say to this court, as an officer of the court, it bears no resemblance to the truth. And for that, I am frustrated as I was in the trial court. At the present time, the status, and if the court wants to hear arguments made on the divorce case, I'm prepared. I'm ready on any question. I'm ready to argue the entire case right now. The judgment was finally entered by Judge Gombrich, the second supplemental judgment, December 12, 2016. My motion for new trial was filed January 6, 2017. The motion for new trial is scheduled for hearing on March 7, and we've already prepared our notice of appeal and the motion for the stay of enforcement. So we can get back to the court, get back to this court, in keeping with the court's decision in the divorce case in Case 5-13-0260. Which basically didn't deal with any of the issues that are before us, correct? Correct. In fact, none of our objections to what Mr. Roy is seeking now is the divorce case. He's seeking his re-argument to make Judge Rudolph a reviewing court of the divorce case. And that was the basis for our motion to dismiss under the rule of our 735 ILCS 5528619. There's another case pending on this issue. The only issue in the Volmeier case, Frank against my client, Elizabeth Scott, she is remarried, had to do with the indemnity. We attacked to our motion. The supplemental judgment entered by Her Honor Judge Cruz, we attached the briefs from the parties in that appeal. And Judge Rudolph said, you're right, there's the other case pending. That's the same issue between these parties. Except the Volmeiers aren't the party. That's correct. There was a movement in that case. By Mr. Roy's attorney of record, to rejoin and consolidate. We agreed to it. It makes sense for judicial economy. And Judge Cruz denied the motion. And that was the ruling. Now, when they talk about the indemnity, I'm strangled. I guess because I'm a little angry that the indemnity has been ruled on and done. That's nonsense. That was one of the issues decided by Judge Cruz. It was confirmed by Judge Gomery. But no one has bothered to mention this court is that those rulings were based on matters outside of the record. That's right. There was no evidence. There were no witnesses. And it was based on matters outside of the record. And in that connection, I'm familiar with that type of problem. It was a D&D case, I argue, in this court. And that was a number 5-080118. That you can't base decisions on matters outside of the record. But now aren't you actually arguing something that you intend to bring up on the next appeal? But it belongs in that case. It belongs in that case. There was no, in this, the Bowmeyer case, there was no depositions taken on the issue. Nothing. Absolutely nothing. In fact, if my memory serves me correctly, it was page 46 of the brief from the appellate. He stipulates, we're in agreement, it's the same issue. Page 36 of his brief. It's the same issue. Same parties. That case. Why is it coming up in this case? It doesn't belong in this case. In fact, all the things, quite frankly, having to do with the divorce case. It doesn't belong in this case. It belongs in the divorce case. And so, when I heard the argument made to the court about the gift, the testimony of the divorce case, there was no testimony of gift. He admitted to signing the papers, and we've included, I think, in our brief, as I recall, our motion to dismiss, whatever, that he was questioned closely by me during the trial. And he signed, and he admitted there was no fraud. At no time did he say that it was a gift. So none of this took place. And they're trying to take from the divorce case to charity, if you will, and bring things over to Walmart, throw it up against the wall, and hope something sticks. Which still has not been finally resolved. I'm sorry? Which still has no final resolution. That's correct. And we've got a motion for a new trial. Yes. In fact, the court, when I brought the divorce case up here initially, was very kind and gentle in slapping my hand, because it found that it was premature. There were a couple of issues Judge Bruce had not addressed, and so the court saw fit just to reverse her ruling as to joint custody and saying it was only contrary to the manifesto, but it was extreme. And so we finally got to the point. I've been begging to get back to this court. It took almost a year and a half or longer to get orders entered so I could pursue the matter, such as the indemnity and other matters, back to this court. I had to go to the Supreme Court. Thank you. Thank you, Mr. Huffman. Roberto, Mr. Pulaski? Just very briefly, Mary. I wanted to point out Mr. Erdman's error. He said that there's no briefing on the issue of the gift, but I keep bringing it up. If you look at page 45 of my brief, you'll see the argument of fraud and inducement. That's where the issue of the gift comes up. My client was reasonably about to believe that the papers that he signed were contrary, that it was really for the purposes of a gift and that they had no intention of collecting on the papers. And so we have raised the affirmative defense at the top of the law, which was stricken of fraud and the inducement of his signing those notes under the false pretense that it was. So you will admit that usually you don't sign a note when somebody gives you something as a gift? That is a bit unusual. But my client's testimony, which for purposes of summary judgment must be believed, is that he was told in the context of a piece of paper that was a month after the funds had already been delivered, which raises the issue of consideration, which I have addressed in my brief. But clearly there were conversations, oh, don't worry about this. It's just we need this just so that you'll treat my daughter well, so you'll send the kids to Catholic school. I believe that that's an appropriate affirmative defense of fraud and the inducement. If that's why he signed the piece of paper, he's entitled to raise that, and we've raised those facts. So the suggestion that I haven't addressed that issue is not correct. And with respect to questioning the amounts of payments, I specifically filed a count for an accounting because the questions remained as to who was paid what. Mr. Erdman keeps using the term malice in the tortious interference context. The language, the appropriate language is not malice, but whether or not it was proper or improper. And clearly we have two judges' rulings that said that the filing of his judgment lien was improper. So the fact that he may believe otherwise, the law of the case certainly is that he's wrong. And secondly, the case law that was decided by Judge Hayden and Judge Cruz clearly found that he was wrong, and he's failed to perfect an appeal of that issue before this court. So the finality of that is that he's wrong, that when he filed the judgment lien, he did so improperly. That is grounds for tortious interference. I agree with Mr. Hupnick that all this stuff belongs in the divorce case, which is why I specifically requested the court stay the pending matter of this matter until those issues could be resolved. We're having to deal with this because the trial court below is not willing to wait for the divorce case to handle and resolve what Mr. Hupnick and I believe are identical issues that probably and properly belong in the divorce case. So we're in an awkward position in that this case has been resolved more quickly than the divorce case, so I have to raise those issues. My client is going to be facing collection efforts upon the finality of this judgment, and frankly, I think improperly. I believe that the evidence, as both Judge Cruz and Judge Garmick have found, it's more properly the death of Ms. Scott. And I would tell the court that Ms. Scott confessed judgment. There shouldn't be any further action in this case. He's had his recovery. He hasn't had his recovery. He has a judgment, you're right. He has a judgment. He has a judgment. But there's no language in either of the documents put forward before the court that creates joint and several liability. If they wanted joint and several liability, it should have been in the note that they drafted. It's not in there. So when Ms. Scott confesses to judgment and the documents themselves do not give rise to a joint and several death or the right of Mr. Ervin to go after either or both, I believe the case is done at that point. So I did want to address that issue. This argument that we said there was no fraud, I want you to very carefully look at that issue. What Mr. Kutnick is arguing is that my client did not complain that he felt he was defrauded. At the time, he signed a piece of paper. Now, imagine that, that a person had to say, I thought I was being defrauded when I signed this piece of paper as an essential element of making a case for fraud. That's ridiculous. If you believe that you're being defrauded, then you did not reasonably rely upon the statements that were made. I see that my time is up. Thank you very much for your careful attention to our case. Thank you, gentlemen, all for your briefs and your arguments. And we'll keep the matter under advisement. We will stand in short recess to reassemble a different panel. All rise.